UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
|---|---|---|---|
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Daniel Torrez | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR PRELIMINARY INJUNCTION (DKT. 12)**

**I.      Introduction**

On October 16, 2025, Petitioner filed a Writ of Habeas Corpus (Dkt. 1) and Ex Parte Motion for Temporary Restraining Order and Order to Show Cause (Dkt. 2) seeking an order directing the United States Immigration and Customs Enforcement ("ICE") to release him from custody forthwith, not to deport him from the United States to a country other than Cambodia, and not to transfer him out of the Central District of California while he is in custody and this action is pending. Dkt. 2 at 2. On the same day, a Temporary Restraining Order ("TRO") issued that barred ICE from deporting Petitioner to a country other than Cambodia, and set a hearing for October 30, 2025. Dkt. 7 at 6. The TRO also directed the parties to meet and confer with respect to Petitioner's claim that he had not been receiving his prescribed medications while detained by ICE. *Id.*

On October 20, 2025, Petitioner filed a Motion for Preliminary Injunction (the "Motion" (Dkt. 12)). On October 24, 2025, Respondents filed an opposition to the Motion ("Opposition" (Dkt. 14)). The hearing on the Motion proceeded on October 30, 2025. For the reasons stated in this Order, the Motion is **GRANTED** pursuant to the specific terms stated in this Order.

**II.      Background**

Petitioner was born in a refugee camp in Thailand in 1980, after his parents allegedly fled Cambodia to escape the Khmer Rouge regime. Dkt. 2 at 9. When he was a year old, Petitioner entered the United States as a refugee. *Id.* Several years later, he adjusted his immigration status to that of a Lawful Permanent Resident. *Id.*

In 2001, when Petitioner was 20 years old, he pled guilty to three counts of robbery and one count of assault with a deadly weapon that resulted from an alleged altercation he had with another person. Dkt. 14 at 3. Petitioner was sentenced and then spent approximately eight years in state custody. *Id.* Upon his release from state custody in 2009, Petitioner was detained by ICE. *Id.* In May 2009, an Immigration Judge ordered Petitioner's removal from the United States. Dkt. 1-7. However, following approximately

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
|---|---|---|---|
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

six months in ICE custody, Petitioner was not removed, but was released subject to an Order of Supervision. Dkt. 2 at 10; *see also* Dkt. 1-8.

Thereafter, Petitioner allegedly changed his life direction. Dkt. 2 at 10. He claims to have received his GED, and to have married a United States citizen with whom he has had three children who are also United States citizens. Dkt. 1-3 ¶ 6. He also allegedly has an adult son from a previous relationship who was born while Petitioner was incarcerated for the aforementioned state offenses. *Id.* ¶ 4, 7. He alleges that this son is also a United States citizen. Dkt. 2 at 8, 10. Petitioner also claims to have worked for many years at a refinery, then briefly owned a cleaning business, and then became a stay-at-home parent for his youngest child. *Id.* at 10.

In 2017, Petitioner was convicted of a misdemeanor for driving under the influence. Following this conviction, he was detained again by ICE. *Id.* While detained, Petitioner was allegedly interviewed by a consular official from the Royal Cambodian Government, but was not issued travel documents that would permit his removal to Cambodia.[1] *Id.* Petitioner remained in detention for approximately 18 months, and was then released, subject to ICE Supervision. *Id.* Petitioner alleges that, since his release, he has complied fully with the terms of his ICE Supervision and has no further criminal history. *Id.*

On August 22, 2025, Petitioner appeared for his annual check-in with ICE. *Id.* At that visit, he was given an ankle monitor to wear, informed that he would be detained and subject to removal, and told to return to the ICE office every two weeks. *Id.* Petitioner complied with these two-week check-ins. When he checked in on October 8, 2025, he was detained by ICE. *Id.*

Upon his detention on October 8, 2025, Petitioner received a Notice of Revocation of Release stating that his "removal to CAMBODIA is imminent" and that he had "fail[ed] to abide by one or more conditions of [his] prior order of supervision." *Id.* at 11. Petitioner contends that he was not provided with any additional explanation for his detention, including the basis for his alleged failure to abide by the conditions of his supervision. *Id.* On October 15, 2025, an ICE officer allegedly interviewed Petitioner and told him that he would either be deported to Cambodia or a third country. Dkt. 12 at 13. On October 17, 2025, Petitioner allegedly was interviewed by two other ICE officers, who told him that they "did not know" why he had been detained on October 8, 2025. *Id.*

Petitioner is currently detained at the ICE Processing Center in Adelanto, California. Dkt. 14-1 ¶ 1. Petitioner alleges that, while in custody, his health has declined because he has been unable to receive his prescribed medications for his heart condition or stomach ulcer, and has not received physical therapy for his pinched nerve. Dkt. 12 at 14.

---

[1] Petitioner contends that, pursuant to a repatriation agreement between the United States and Cambodia, a Cambodian national may only be repatriated on a case-by-case basis, after an in-person interview by the Cambodian consulate. Dkt. 1 at 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

### III.  Analysis

    A.  Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (same).

The Ninth Circuit also applies a "sliding scale" formulation of the preliminary injunction test under which an injunction may be issued where, for example, "the likelihood of success is such that serious questions going to the merits [are] raised and the balance of hardships tips sharply in plaintiff's favor[,]" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (internal quotation marks and brackets omitted), provided the other elements of the *Winter* test are met. *Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1081 (9th Cir. 2015) ("Serious questions going to the merits and hardship balance that tips sharply towards plaintiffs can also support issuance of a preliminary injunction, so long as there is a likelihood of irreparable injury and the injunction is in the public interest." (internal quotation marks and brackets omitted)).

A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original and citation omitted); *Silvas v. G.E. Money Bank*, 449 F.App'x 641, 644 (9th Cir. 2011) (same). The decision whether to grant or deny a preliminary injunction is a matter within the equitable discretion of a district court. *See Winter*, 555 U.S. at 32.

    B.  Application

        1.  <u>Request for an Order Barring Deportation to a Third Country or to Detention Outside of this District</u>

Prior to the October 30, 2025 hearing, Respondents had not expressly challenged either the request to enjoin Petitioner's removal to a third country*, i.e.,* one other than Cambodia, or to transfer him to a location outside of this District while he is in detention and this litigation is pending. At the hearing, counsel for Respondents stated that they would not agree to limit the deportation of Petitioner to Cambodia. Counsel for Respondents stated that deportation to Thailand was another possibility, because Petitioner was born there. Counsel for Petitioner replied that Respondents had not presented any evidence in the record that they were planning to deport Petitioner to Thailand, and that if Respondents were to seek to do so, they would have to comply fully with the policies and regulations of the Department of Homeland Security. This is consistent with the analysis in the TRO. *See* Dkt. 7 at 4.

Counsel for Respondents did not expressly oppose an order precluding Petitioner's transfer outside of this District. In light of the terms of this Order, however, that issue is moot.

        2.  <u>Request to Be Released from ICE Custody</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

The elements that apply to a determination whether a preliminary injunction granting such relief are addressed in the following discussion.

    a)  Likelihood of Success on the Merits

Petitioner asserts that he is likely to succeed on the merits of his claims that his detention is in violation of 8 C.F.R. § 241.13(i)(2)-(3) and his right to due process arising under the Fifth Amendment to the United States Constitution. He also asserts that he was not provided with a sufficient opportunity to contest the revocation of his release.

    (1)  Applicable Statute and Regulations

Detention, release, and removal of individuals with an order of removal is governed by 8 U.S.C. § 1231(a)(3) and its implementing regulations. *See* Dkt. 7 at 4–5. Those regulations provide that, if a noncitizen is not removed within 90 days, and there is no significant likelihood of removal, that noncitizen may be released under an order of supervision ("OSUP"). 8 C.F.R. § 241.13. Once a noncitizen is released under an OSUP, 8 C.F.R. § 241.13(i)(2) provides for a revocation of that release when "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." "ICE's own regulations thus place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future." *Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025).

Upon revocation, the noncitizen is entitled to be "notified of the reasons for revocation of his or her release" and to have "an opportunity to respond to the reasons for revocation stated in the notification" through an informal interview "promptly" after his return to ICE custody. 8 C.F.R. § 241.13(i)(3). This opportunity to respond must allow the noncitizen to "submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* Further, the "revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

    (2)  Insufficient Showing of Changed Circumstances

As noted, Petitioner was placed under an OSUP in 2017, and claims to have followed all associated requirements. The notice to Petitioner only stated that he "fail[ed] to abide by one or more conditions of [his] prior order of supervision" and that "removal to CAMBODIA is imminent" Dkt. 2 at 11. It did not state, nor was Petitioner told, what condition of his release he allegedly violated. At the October 30, 2025 hearing, Respondents conceded that Petitioner has not violated any of the requirements of his OSUP.

Furthermore, a notice that removal is "imminent," by itself and not supported by any specificity or evidence, is not sufficient to show the changed circumstances that warrant detention and removal under § 241.13(i)(2). *See Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2. ("A pro forma notice that gives no information on why release is being revoked, beyond simply that Petitioner 'will be taken into custody for the purpose of removal from the United States[,]' is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

insufficient."). In support of the Opposition, Respondents provided the declaration of Deportation Officer Langill. He declares that Enforcement and Removal Operations has both "submitted a travel document request" and that it "is in the process of preparing a request for travel documents." Dkt. 14-1 ¶ 13. These statements do not appear to be consistent. Further, as stated in *Sun v. Noem*, courts have not found vague assertions by ICE that it is seeking travel documents with respect to a deportation to be a sufficient showing of "changed circumstances." No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2-3.

Officer Langill also declares that it is "[his] understanding that ICE has recently been able to timely obtain travel documents within approximately one month and effectuate removal to Cambodia." Dkt. 14-1 ¶ 14. However, neither the declaration nor the Opposition addresses whether ICE has been able to obtain documents for persons like Petitioner who have previously been denied entry into Cambodia. Moreover, at the hearing, counsel for Respondents stated that the removal documents have not been issued by the Cambodian consulate, but that it is expected that they will be issued and received by ICE within 60-90 days, *i.e.*, between late December 2025 and late January 2026. This does not support a claim that, at the time of Petitioner's detention on October 8, 2025, his deportation was "imminent."

Respondents appear to argue that under § 241.4(*l*), any circumstance, not just changed circumstances, may authorize re-detention in the discretion of the relevant officials. Dkt. 14 at 5 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (quoting 8 C.F.R. § 241.4(*l*)(2)(i), (iv)). This position is unpersuasive. The general procedures set forth in § 241.4, by their own terms, expressly "do not apply" to the circumstances here, where ICE previously "made a determination . . . that there is no significant likelihood" of removal in the "reasonably foreseeable future." 8 CFR § 241.4(b)(4). Instead, § 241.13 applies as a "special review procedure[]" in circumstances where, as here, the noncitizen "has provided good reason to believe there is no significant likelihood of removal" to the country of removal or a third country "in the reasonably foreseeable future." 8 CFR § 241.13(a). Once the "special review" procedures of § 241.13 are triggered, a noncitizen "shall again be subject to" the ordinary § 241.4 procedure only if ICE "determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future . . . ." 8 CFR § 241.4(b)(4).

With respect to the facts presented here, ICE already determined that removal is not reasonably foreseeable when it released Petitioner in 2017 due to an inability to secure travel documents. Dkt. 2 at 10. Accordingly, a finding of changed circumstances is required before ICE may re-detain Petitioner -- whether proceeding under § 241.4 or § 241.13.[2] *Cf. Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). Respondents have not proffered sufficient evidence of changed circumstances.

Based on the foregoing, there is a "serious question" as to the merits of whether Petitioner's detention was proper or warranted due to changed circumstances. Respondents proffer no evidence that he

---

[2] Moreover, even if Respondents have greater discretion to re-detain noncitizens under § 241.4(*l*) than § 241.13, "the noncitizen's liberty interests are still implicated by his or her re-detention" such that notice and an opportunity to be heard are still required, for the reasons later addressed. *Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
|---|---|---|---|
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

violated any condition of his release or that his deportation to Cambodia was imminent, at the time of detention, or that it is now imminent.

(3)     Insufficient Opportunity to be Heard

There is also not an adequate showing by Respondents that Petitioner was provided with sufficient notice and opportunity to be heard as to the revocation of his release. This is required by the Due Process Clause of the Fifth Amendment to the United States Constitution and the relevant regulations, 8 C.F.R. § 241.13(i)(3).

"In order to analyze a procedural due process claim, [courts] engage in a two-step analysis" which first "determine[s] whether the [detainee] was deprived of a constitutionally protected liberty or property interest" and then "examine[s] whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). The first step is clearly satisfied. Petitioner has a constitutionally protected liberty interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The next step is to determine whether Petitioner was afforded sufficient procedural protections prior to his detention. At a minimum, due process requires that a noncitizen have the opportunity to respond to the allegations that form the basis for the planned detention. *Cf. United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) (in the expedited removal context, a noncitizen has the "fundamental due process right[]" to receive "notice of the charge" they face and an "opportunity to respond to that charge), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020). As shown by the prior discussion, Petitioner was not given an accurate statement as to the reason for his detention. Therefore, he was unable to make any meaningful response as to why he should not be detained.

Further, Petitioner was not provided with a pre-deprivation hearing before a neutral decisionmaker, which is "one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property.").

To determine whether the Due Process Clause requires a pre-deprivation hearing, courts weigh "the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner's private interest is substantial. He has resided in the United States since 1981. Petitioner has four children, three of whom are minors. Dut. 1-3 ¶ 7. He is a stay-at-home caretaker for his youngest son, and his family cannot otherwise afford childcare. *Id. See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (cleaned up) (petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[ ] with family and friends to form the enduring attachments of normal life"). The length of time in which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

Petitioner has been on supervised release also confirms his private interest in continued release. *See Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025) (a noncitizen who was released in 2018 and re-detained in 2025 had a "strong private interest" in continued release due to "the length of time he was on supervised release, as well as [his] ties to his community."); *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.")

The risk of erroneous deprivation is also significant. Without the "additional procedural safeguard of a pre-detention hearing," Respondents would be able to "revoke a release determination at any time without either a hearing before or additional oversight from a neutral adjudicator." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025); *see also Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *7 (N.D. Cal. July 17, 2025) (a pre-detention hearing by a neutral arbiter protects against erroneous deprivation because "each of [ICE's post-detention] procedures is essentially no more than a request to ICE's arresting agents or their supervisors at headquarters to reconsider the agency's unilateral detention decision").

As noted, Petitioner was detained after the Respondents issued a notice stating that he had "fail[ed] to abide by one or more conditions of [his] prior order of supervision." Dkt. 2 at 11. However, as was also noted, during the October 30, 2025 hearing, counsel for Respondents withdrew that position and conceded that Petitioner had not violated of any of the conditions of his supervised release. These inconsistent positions underscore the risk of error if Respondents are permitted to re-detain Petitioner without any pre-deprivation process. When he was detained, Petitioner was not given a reasonable opportunity to respond to the allegations made prior to his detention, and suffered a corresponding harm. He could not have meaningfully responded because he was not told that his supposed imminent deportation was the sole basis for his detention, which is what Respondents now contend.

Furthermore, the limited procedural protections Respondents have provided to Petitioner are not consistent with the applicable regulations. Petitioner was interviewed by ICE officers on October 15 and October 17, 2025. He was not provided any information during either of the interviews as to why the OSUP was being revoked. Dkt. 12 at 13; Dkt. 12-2 ¶ 7. Respondents contend that ICE has broad discretion to revoke release where "the purposes of release have been served . . . [or] [t]he conduct of the alien, *or any other circumstance*, indicates that release would no longer be appropriate." Dkt. 14 at 5 (citing *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (quoting 8 C.F.R. § 241.4(*l*)(2)(i), (iv)). However, Respondents must nevertheless provide to Petitioner an explanation as to the reason for the revocation so that Petitioner has a meaningful opportunity to respond in accordance with 8 C.F.R. § 241.13(i)(3).

Finally, ICE does not have a material interest in re-detaining Petitioner without a hearing. Civil immigration detention is only permitted to prevent flight or protect against danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). However, ICE previously determined that Petitioner was neither a flight risk nor a danger to the community when it released him under an OSUP on October 11, 2017. Dkt. 1-8. Petitioner has been under supervision since the issuance of that order. ICE does not dispute that since 2017, Petitioner has not missed any required ICE check-in, and has been fully compliant. Dkt. 1-3 ¶ 11. This was confirmed by counsel for Respondents at the October 30, 2025 hearing. Petitioner's family ties and connections are substantial and support a determination that he is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

not a flight risk. Further, there is no evidence proffered that he has engaged in any criminal conduct since his misdemeanor DUI conviction eight years ago. Accordingly, there is not a basis to find that his release would present a risk to the community. Under these circumstances, the Government's interest in re-detaining Petitioner without a hearing is very modest. *See Zakzouk v. Becerra*, No. 25-CV-06254 (RFL), 2025 WL 2097470, at *3 (N.D. Cal. July 26, 2025).

\*       \*       \*

Because Respondents have neither shown sufficient changed circumstances to warrant a revocation of release, nor provided Petitioner with sufficient notice and an opportunity to be heard, Petitioner has shown that he is likely to succeed on the merits of his claim.

      b)      Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). For the reasons stated earlier as to the failure to provide Petitioner with the basis for the revocation of the OSUP or an opportunity to respond, his due process rights have been substantially impaired. Accordingly, this *Winter* factor favors granting injunctive relief.

Further, the Ninth Circuit has identified what are "irreparable harms imposed on anyone subject to immigration detention," including lesser access to medical care in detention facilities, economic burdens on detainees and their families, and harms to children whose parents are detained. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Petitioner was detained on October 8, 2025, and despite attempts to receive medical care, was unable to see a health care provider or receive his heart medication during his initial time in custody. Dkt. 12-2 ¶ 5. During that time, he claims to have experienced sharp pain in his chest, the feeling of needles in his limbs, and a body cramp that left him unable to move. Dkt. 12-2 ¶ 4. At the hearing, counsel for Respondents stated that since the time the TRO issued, Petitioner has been provided with appropriate medical care. Counsel for Petitioner replied that Petitioner has only been seen by nurses, and that an examination by a physician is warranted. Based on the foregoing, Petitioner's health issues, and their treatment, remain an issue with respect to the assessment of irreparable harm.

Petitioner also contends that his separation from his family has caused distress not only to Petitioner, but to his four-year-old son for whom he is the primary caretaker, and for his wife, who is now caring for their children and supporting their household on her own. *See* Dkt. 1-3 ¶ 14. These are harms and economic burdens on Petitioner's family that *Hernandez* recognized as "irreparable." 872 F.3d at 995.

For these reasons, this factor supports the issuance of a preliminary injunction.

      c)      Balance of Equities and the Public Interest

The balance of equities and public interest also favor the issuance of a preliminary injunction. These factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
|---|---|---|---|
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

173 L.Ed.2d 550 (2009)). "A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). This is because "it is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government [ ] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Id.* (quotation and citations omitted). Additionally, in cases of removal, "there is a public interest in preventing aliens from being wrongfully removed." *Nken v. Holder*, 556 U.S. 418, 436 (2009); *see also Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) ("it would not be equitable or in the public's interest to allow ... [violation of] the requirements of federal law, especially when there are no adequate remedies available" (citations omitted)).

Because Plaintiff is likely to succeed on his due process claim, including that the revocation and detention violated ICE regulations, these *Winter* factors tip "decisively" in Petitioner's favor. *See Baird*, 81 F.4th at 1042.

> d)  Appropriate Relief

Respondents contend that, even if there were a violation of the revocation procedure, a release from detention is not the appropriate remedy. Dkt. 14 at 6. However, "[t]o return to the status quo – the last uncontested status which preceded the pending controversy," it is appropriate to "release Petitioner under the same conditions he was released previously." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *6 (E.D. Cal. July 14, 2025). Thus, "when," as here, "ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025) (citing *M.S.L. v. Bostock,* No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11-12 (D. Or. Aug. 21, 2025)); *see also Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("[B]ecause officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."). Further, this is a suitable remedy because it directly addresses the impropriety of the detention of Petitioner and the resulting harm that he has sustained.

**IV.   Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. Petitioner shall be released forthwith from ICE custody, and then continue to comply with the terms of his OSUP. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf, in concert or in participation with them, shall not re-detain Petitioner without notice and following a pre-detention hearing before a neutral immigration judge at which it is determined that detention is appropriate and warranted under the applicable law and regulations either because Petitioner has violated a term of his release or because his deportation to Cambodia is imminent. In light of the facts here and the finding that Petitioner is not a flight risk or danger to the community, the latter must be supported by sufficient evidence that the necessary documents from the Republic of Cambodia have been issued and are in the possession of ICE. Further, Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf, in concert or in participation with them, shall not remove Petitioner to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02733-JAK (Ex) | Date | October 30, 2025 |
|---|---|---|---|
| Title | Vuthy Im v. Fereti Semaia, et al. | | |

any country other than Cambodia, without appropriate notice and an opportunity to be heard in accordance with the applicable ICE regulations.[3]

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | DT |

---

[3] Fed. R. Civ. P. 65(c) requires that, prior to granting injunctive relief, a movant pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks omitted). The bond requirement is not imposed, because it is unlikely that Respondents will incur any significant cost, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996). Further, at the October 30, 2025 hearing, counsel for Respondents agreed that the payment of security was unnecessary.